UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN P. LOPEZ,<br><br>      Plaintiff,<br><br>  v.<br><br>COUNTY OF SALEM, et al.,<br><br>      Defendants. | No. 19-cv-16653 (NLH) (SAK)<br><br><br>OPINION |

APPEARANCE:

Jonathan P. Lopez
Ancora Psychiatric Hospital
301 Spring Garden Rd.
Ancora, NJ 08037

    Plaintiff Pro se

HILLMAN, District Judge

    Plaintiff Jonathan P. Lopez seeks to bring a complaint pursuant to 42 U.S.C. § 1983 against Defendants Salem County, Salem County Sheriff's Office, Sheriff Charles Miller, Salem County Correctional Facility ("SCCF"), SCCF Warden John Cuzzupe, Deputy Warden Robert Reilly, Lt. Kathy Crawford, and John and Jane Does 1-10.  See ECF No. 1.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

1

For the reasons set forth below, the Court will permit the complaint to proceed in part.[1]

I. BACKGROUND

On July 13, 2019, Plaintiff was a pretrial detainee in SSCF. ECF No. 1 at 19. Plaintiff, who "has a documented history of serious mental illness and hospitalizations for psychiatric-related reasons," was "being housed on 23 per hour in-cell-daily segregation for a serious self-harm threat, i.e., a threat to 'cut off his testicles and roll them down the hall.'" Id. According to the complaint, Plaintiff "began to 'hear voices' in his cell" and "was delusional and incoherent." Id.

Later that day, Plaintiff received notice that he was being charged with a disciplinary infraction. Id. at 20. "The Disciplinary Report alleged that Plaintiff Lopez threatened another inmate . . . saying that he would 'beat his ass' and 'split his skull' when in general population." Id. "The Disciplinary Report also alleged that Plaintiff Lopez threatened

---

[1] The Court's preliminary review under 28 U.S.C. § 1915 does not determine whether the allegations in the complaint would survive a properly supported motion to dismiss filed by a defendant after service. See Richardson v. Cascade Skating Rink, No. 19-08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

2

to 'flood his cell.'" Id. SSCF staff discovered Plaintiff slicing at his wrist with a metal staple on July 14, 2019 and intervened before he seriously injured himself. Id. at 21. They placed Plaintiff in "a seven point steel restraint chair" until early July 15, 2019. Id. A facility nurse gave Plaintiff medication before removing Plaintiff from the chair. Id. He was placed back in his cell, but "[e]ven after receiving his prescribed psychotropic medication along with an additional tranquilizer Plaintiff Lopez continued to babble incoherently, and threaten self-harm and suicide . . . ." Id. at 21-22. Plaintiff exhibited other destructive behavior once back in his cell and was put back into the restraint chair. Id. at 22. He was given his medication early on July 16, 2019 and returned to his cell. Id.

SSCF staff turned off the water to Plaintiff's cell on July 16, 2019 because Plaintiff "used the toilet to flood out his cell and the rest of the unit." Id. at 23. "Plaintiff Lopez continued to play with and eat his own feces and urine. This time, Plaintiff Lopez's blanket and safety gown were taken by staff after bombarding his cell with pepper spray." Id. "[] Plaintiff Lopez was forced to sleep in a flooded, feces and urine-laden, pepper-spray contaminated cell." Id. Plaintiff states he was not taken to an outside hospital for evaluation and "possible involuntary commitment to a hospital unit per

3

State law" despite a "pending criminal court order in place for in-patient hospitalization for the purposes of a 'competency evaluation and determination.'" Id. at 23-24.

Plaintiff alleges that Defendant Crawford conducted disciplinary proceedings against him in absentia instead of referring him for treatment. Id. at 24. He alleges Defendant Crawford and the Disciplinary Board found him guilty of "various disciplinary infractions, most of which, the exception of the single report written by Corrections Officer Porter to this very day, were never even served upon the Plaintiff." Id. Plaintiff further alleges that Defendant Crawford did not send a disciplinary investigator to speak with Plaintiff before conducting the hearing and did not provide him with a written notice of her decision afterwards. Id. at 24-26. According to the complaint, Defendant Crawford sanctioned Plaintiff with 60 days of disciplinary segregation. Id. at 26.

Plaintiff appealed the sanctions to Defendant Reilly. Id. at 29. Defendant Reilly denied the appeal with no explanation other than "'he reviewed the matter with Lt. Crawford, and she tells [Defendant Reilly] all procedures were followed, and that he supports her decision." Id. Plaintiff alleges that Defendant Cuzzupe refused to "intercede or correct" Defendant Reilly's "improper baseless review of Defendant Crawford's decision and sanction" and is "expressly liable for failing to

4

train both Defendant Reilly and Defendant Crawford as to proper disciplinary hearing process . . . ." Id. at 29-30. He further asserts Defendant Miller "is responsible for allowing his employees at [SCCF] to operate with no pertinent interest in understanding due process, equal protection of the law or acknowledgement of State law governing inmate disciplinary proceedings . . . ." Id. at 30-31.

II. STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding in forma pauperis.[2] The Court must sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding in forma pauperis and is incarcerated.

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMC

---

[2] Plaintiff's address indicates he is in Ancora Psychiatric Hospital. The terms of his admission to the facility are unknown, but Plaintiff was a pretrial detainee in a county jail at the time he filed his complaint. ECF No. 1. Therefore, the screening provisions of § 1915 apply to his complaint.

5

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. DISCUSSION

A.   Defendant Crawford

Plaintiff argues Defendant Crawford violated his Fourteenth Amendment right to due process during his disciplinary proceedings.  "[P]risons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  Kanu v. Lindsey, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting Rapier v. Harris, 172 F.3d 999, 1003-06 (7th Cir. 1999)). "However, the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the procedural due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974)."  Id.  "These protections include the right to receive written notice of the

6

charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." Id. Plaintiff alleges Defendant Crawford did not provide him with any of these protections. Therefore, the Court will permit the due process claim against Defendant Crawford to proceed.

The Court will dismiss Plaintiff's retaliation and conspiracy claims against Defendant Crawford, however. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted). Plaintiff does not allege any facts that support a reasonable inference that Defendant Crawford took any adverse action against Plaintiff because he engaged in constitutionally protected activity.

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

7

immunities under the laws.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). The Supreme Court has "emphasized that because § 1985(3) requires the 'intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Id. at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (emphasis in original). "Thus, a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." Id. Plaintiff has not made any such factual allegations.

The Court will permit Plaintiff's due process claims to proceed against Defendant Crawford, but the retaliation and conspiracy claims will be dismissed without prejudice.

B. Appeal-based Claims

Plaintiff brings claims against Defendants Reilly and Cuzzupe for failing to overturn Defendant Crawford's decision via the administrative appeal process. "[A]ccess to prison grievance procedures is not a constitutionally-mandated right." Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) (per curiam) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 138 (1977)). Moreover, "a prison official's secondary

8

review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right." Id. Plaintiff cannot state a claim of a constitutional violation based on Defendants' decision not to vacate Plaintiff's disciplinary charges on appeal.

C. Failure to Train

Plaintiff also alleges that Defendant Cuzzupe and Defendant Miller failed to train their subordinate employees. He alleges Defendant Cuzzupe "failed] to train both Defendant Reilly and Defendant Crawford as to proper disciplinary hearing process," and Defendant Miller "is responsible for allowing his employees at [SCCF] to operate with no pertinent interest in understanding due process, equal protection of the law or acknowledgement of State law governing inmate disciplinary proceedings . . . ." ECF No. 1 at 29-31.

A supervisor may be liable for the misconduct of a subordinate if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). "Claims alleging a failure to train, failure to discipline, or failure to supervise

9

are a subset of . . . policy or practice liability." Womack v. Moleins, No. 10-2932, 2015 WL 420161, at *3 (D.N.J. Jan. 30, 2015) (citing Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds sub nom. Taylor v. Barkes, 575 U.S. 822 (2015)).

"[F]ailure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). "A plaintiff sufficiently pleads deliberate indifference by showing that '1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011)) (alterations in original). Plaintiff has not pled any facts that would support a reasonable inference that the procedural aspects of disciplinary hearings at SCCF involve "a difficult choice or a history of employees mishandling." Plaintiff "simply hypothesizes that such a failure or inadequacy — whatever it was — must have occurred." Brinson v. City of

10

Newark, No. 20-9606, 2020 WL 6268696, at *6 (D.N.J. Oct. 26, 2020). The Court will dismiss this claim without prejudice.

D. Monell Liability

Plaintiff also names SSCF, the Salem County Sheriff's Office, and Salem County as defendants. The Court will dismiss SSCF because a prison is not a "person" under § 1983 and is not subject to liability under that statute. Additionally, courts "treat the municipality and its police department as a single entity for purposes of section 1983 liability." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997). See also Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x 909, 912 (3d Cir. 2003) ("[P]olice departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself."). Therefore, the Court will dismiss SCCF and the Salem County Sherriff's Office and consider Plaintiff's allegations as being made against Salem County.

It is well established that local government units cannot be held liable via respondeat superior for the constitutional violations of their employees "unless action pursuant to official municipal policy of some nature caused a constitutional tort" to be committed by such employees. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978). To plausibly plead Monell liability, a plaintiff must identify the

11

challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered.  Harley v. City of New Jersey City, No. 16-5135, 2017 WL 2779466, at *7-8 (D.N.J. June 27, 2017).  Plaintiff has not stated any facts that would support a reasonable inference that a Salem County policy, practice, or custom caused the alleged due process violations during Plaintiff's disciplinary proceedings.  The Court will dismiss this claim without prejudice.

IV.  CONCLUSION

For the reasons stated above, the Court will permit Plaintiff's due process claims against Defendant Crawford to proceed.  The remaining claims and defendants will be dismissed without prejudice for failure to state a claim.

An appropriate order follows.


Dated: June 2, 2022                    s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.